UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60155-CR-LEIBOWITZ
CASE NO. 25-60015-CR-LEIBOWITZ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CARLOS JOSE ABREU,

        Defendant.

_____/

## CARLOS ABREU'S MOTION FOR A *BOOKER* VARIANCE AND SENTENCING MEMORANDUM PURSUANT TO 18 U.S.C. 3553(a)

Carlos Jose Abreu, through counsel, hereby files this Motion for a Downward Variance and Sentencing Memorandum pursuant to *United States v. Booker* and 18 U.S.C. § 3553(a), and as grounds in support thereof states as follows:

### INTRODUCTION

The PSI concludes that the sentencing guideline calculations applicable to Mr. Abreu are a total offense level of 20 and a criminal history category of I for a sentencing guideline range of 33 to 41 months, however, count 4 of the indictment has a minimum mandatory 24-month sentence to be run concurrent to any sentence received in counts 1-3. (PSI at paragraph 101). Mr. Abreu requests that this Honorable Court grant a downward variance from his sentencing guideline range pursuant to the "The Need to Avoid Unwanted Sentencing Disparities," the "Nature and Circumstances of the Offense," and "The History and Characteristics of the

Defendant," prongs of 18 U.S.C. § 3553(a).

First, Mr. Abreu requests that the court consider the statistics compiled by the United States Sentencing Commission which demonstrate that the average length of a sentence imposed for defendants over the last five years sentenced pursuant to U.S.S.G. §2K2.1, with a final offense level of 20 and a criminal history category of I, was 30 months. Next, Mr. Abreu requests the court consider that the nature and circumstances surrounding this incident separate himself from other defendants charged under the same statute. Finally, Mr. Abreu requests the Court consider his age, adolescent history, lack of criminal history, and the fact that he is the sole financial provider of his household including his wife and two minor children.

Mr. Abreu requests that the Court impose a sentence of 18 months for counts 1-3 and impose the minimum mandatory sentence of 24 months as to count 4, which he believes is sufficient but not greater than necessary to accomplish the goals of the sentencing statute and which is reasonable in light of the facts and circumstances discussed below.

### THE NEED TO AVOID UNWARRANTED SETENCING DISPARITIES

Using the Sentencing Commission JSIN tool to ascertain how offenders have been sentenced under the same Guideline, criminal history category, and offense level (https://jsin.ussc.gov/analytics/saw.dll?Dashboard) (last accessed May 27, 2025), reveals that in the five-fiscal-year period from 2020-2024, there were 72 offenders whose primary guideline was 2K2.1 with a final offense level of 20 and a Criminal History Category of I (range of 33-41 months). After excluding offenders who received

2

a 5K1.1 substantial assistance departure, for the 68 offenders (94%) who received a sentence of imprisonment, the average length of imprisonment, in whole or in part, was 30 months. See table below:



**Average and Median Length of Imprisonment for Defendants in Selected Cell Who Received a Sentence of Imprisonment (excluding §5K1.1)**
Fiscal Year 2020-2024

**Note:** The figure includes the 68 defendants reported to the Commission (1) whose primary guideline was §2K2.1, with a Final Offense Level of 20 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.

Mr. Abreu requests that the court consider the above statistics in support of his request for a downward variance. Based on this data, a guideline sentence for Mr. Abreu would result in an unwarranted sentencing disparity in derogation of 18 U.S.C. §3553(a)(6). Moreover, it would provide an unjust punishment for Mr. Abreu that is greater than necessary to achieve the goals of the sentencing statute and he therefore requests that the Court remedy the disparity by granting a downward variance as requested.

**NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The "Nature and Circumstances of the Offense" prong of 18 U.S.C. § 3553(a) supports a variance from the applicable guideline range. Mr. Abreu understands and acknowledges the seriousness of the charges involved in this case as well as the

potential stress and harms they pose. Notwithstanding this, the nature and circumstances surrounding this particular case separate Mr. Abreu from other defendants charged under the same statute.

This case arose from several passport applications submitted by Mr. Abreu on behalf of himself and his minor daughters. The applications were submitted by Mr. Abreu in anticipation of an upcoming family trip with his wife and daughters to visit his home country, the Dominican Republic. Mr. Abreu is not alleged, and there is no evidence to support, that he submitted the applications for any other nefarious reason.

The identity Mr. Abreu used to fill out these applications belongs to a Puerto Rican citizen who was interviewed by Homeland Security agents. The following investigation did not reveal any evidence that Mr. Abreu used this identity to steal any money or property from this individual, or that Mr. Abreu facilitated the transfer of any money or property from this individual.

As this court well knows, the vast majority of aggravated identity theft cases involves an individual or group of individuals who surreptitiously acquire the identity of another to financially enrich themselves at the expense of the individual resulting in direct financial harm to that person. The facts in this case are vastly different and separate Mr. Abeu from other similar individuals charged under the same statute.

Mr. Abreu is also charged in count 3 of the indictment with being an alien in possession of a firearm. It is important to note that none of the firearms in question are alleged to have been stolen, illegally altered, or had their serial numbers

destroyed. There is no evidence that any of the firearms were involved in any crimes or that they were purchased with the intent that they be used during the commission of any crime. Finally, there is no evidence that any of the firearms were illegally smuggled into the country or that Mr. Abreu intended to smuggle them out of the country.

### HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The "History and Characteristics of the Defendant" prong of 18 U.S.C. § 3553(a), supports a variance from the applicable guideline range. Mr. Abreu arrived in the United States as a 21-year-old immigrant. He arrived alone, he did not speak English, and he was admittedly both naïve and ignorant to our cultural customs and our formal processes. Mr. Abreu was approached by a group of individuals who offered to sell him an identity that would allow him to work and purchase property in the United States. Mr. Abreu was also told that the identity would not connect back to a real person. With this information in mind, Mr. Abreu continued to work and live in the United States for the next two decades. Importantly, Mr. Abreu was not convicted of any criminal charges while living here for over twenty years.

The government has made repeated references to a pending state court warrant out of New Jersey. However, there is currently no evidence before this Court, nor is there any evidence cited to by the government that in any way supports the veracity of these claims against Mr. Abeu. Additionally, the New Jersey state court prosecutors were contacted by USPO regarding this pending case however, they could not provide any information regarding the circumstances of the case (PSI ¶ 61).

5

Despite this lack of information about the circumstances of the case and an overall lack of evidence to even corroborate the authenticity of the allegations, the government persists in their baseless claim that Mr. Abreu began using the alias to evade these charges. This baseless claim ignores the fact that Mr. Abreu began using the alias eight years before the New Jersey allegations were made, and that he remained in the state of New Jersey until 2015, a full seven years after the warrant was issued.

Finally, prior to his arrest Mr. Abreu was employed at Blue Stream Fiber as a quality assurance technician (PSI ¶84). Mr. Abreu earned approximately $4,100 a month at this position and used the income to support himself, his wife, and his two minor children living in the United States. Since his arrest Mr. Abreu's wife-who was previously unemployed- has taken full financial responsibility of supporting their two children. Mr. Abreu's wife is now employed earning minimum wage. The money she makes, although helpful, is far less than what Mr. Abreu earned while working. This financial stress continues to greatly impacted Mr. Abreu's wife and their two children.

## CONCLUSION

Mr. Abreu acknowledges the seriousness of the charges he has plead to, and he takes full responsibility for his conduct in this case, however Mr. Abreu respectfully requests that this Honorable Court consider the above arguments in support of a variance which provides proper context for his conduct and separate him from similar defendants charged under the same statute. Mr. Abreu respectfully requests that this court impose a sentence of 18 months for counts 1-3 and impose the minimum

mandatory sentence of 24 months as to count 4, which he believes is sufficient but not greater than necessary to accomplish the goals of the sentencing statute and which is reasonable in light of the facts and circumstances of this case.

WHEREFORE, Mr. Abreu hereby files this Request for a Downward Variance and Sentencing Memorandum.

Respectfully submitted,

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

By:    /s/ *Wesley Wallace*
Wesley D. Wallace
Assistant Federal Public Defender
Florida Bar No. 1025775
One East Broward Boulevard, Suite 1100
Fort Lauderdale, Florida 33301
Tel: 954-356-7436
E-Mail: Wesley_Wallace@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY certify that on June 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Wesley Wallace, AFPD*
Attorney for Defendant

8