UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 0:24-cr-60155-DSL-1 and 0:25-cr-60015-DSL-1
_____

UNITED STATES OF AMERICA,        )
                    Plaintiff,   )
                                 ) JUNE 11, 2025
              -vs-               )
CARLOS JOSE ABREU,               )
                    Defendant.   ) 10:57 A.M.-11:32 A.M.
_____ )

SENTENCING
BEFORE THE HONORABLE **DAVID S. LEIBOWITZ**,
UNITED STATES DISTRICT JUDGE, PRESIDING

**APPEARANCES:**

**On behalf of the Plaintiff:**

> **BRIANNA COAKLEY, AUSA**
> United States Attorney's Office
> 99 NE 4th Street
> Miami, Florida 33132-2131
> brianna.coakley@usdoj.gov

**On behalf of the Defendant:**

> **WESLEY DANIEL WALLACE, AFPD**
> Federal Public Defender's Officer
> 1 East Broward Boulevard
> Suite 1100
> Ft. Lauderdale, Florida 33301
> Wesley_Wallace@fd.org

**STENOGRAPHICALLY**   SHAMELLE "SHELLY" KELLEY, CCR, RPR
**REPORTED BY:**       Official Court Reporter
                       400 N. Miami Avenue
                       9th Floor, South
                       Miami, Florida 33128
                       Shamelle_Kelley@flsd.uscourts.gov.

*** *** *** ***

(Call to the order of the Court at 10:57 A.M.)

THE COURTROOM DEPUTY:  Calling the matter of the United States vs. Carlos Jose Abreu, 24 Criminal 60155 and 25 Criminal 60015.

Counsel, please announce your appearances for the record, beginning with the Government.

MS. COAKLEY:  On behalf the United States, Brianna Coakley.  Good morning.

THE COURT:  Ms. Coakley, good morning.

MR. WALLACE:  Good morning, Your Honor.  Wesley Wallace from the Federal Public Defender's Office on behalf of Mr. Carlos Abreu, who is being assisted with the services of the court interpreter.

THE COURT:  Good morning, Mr. Abreu.  Good morning, Mr. Wallace.  We're here for sentencing.  Let me first tell you what I've reviewed.  I've reviewed two Indictments. He's going to be sentenced on two Indictments today.  The Indictments are 24CR60155 and 25CR60015.

So just from here forward, I might be calling things the 24 Indictment and the 25 Indictment for ease of statement, because, frankly, the numbers are otherwise too close; and I just want to make sure that the parties know that, that I'm going to refer to things as the 24 Indictment and the 25 Indictment, so in case I misstate something, the parties will be able to correct me quite easily.  So I've

reviewed those.

I've reviewed the factual proffer statements for both Indictments.  I've reviewed the Final PSR and the addenda.  I've reviewed the Sentencing Memorandums that were submitted at Docket Entry 60 and 61.

Mr. Wallace, I think that's it.  Is there anything else that I should have reviewed?

MR. WALLACE:  No, Your Honor.  I believe you've summed up the entirety of the relevant documents for sentencing.

THE COURT:  Sir, have you reviewed all of those documents with your client prior to sentencing?

MR. WALLACE:  Yes, Your Honor, I have.

THE COURT:  There are no objections; right?

MR. WALLACE:  That is correct, Your Honor.

THE COURT:  You agree, Ms. Coakley, there's no factual objection to the PSR?

MS. COAKLEY:  No, there is none.

THE COURT:  Okay.  Thank you.  Let me just do the first part of my job and calculate the Advisory Sentencing Guideline Range.

The Court adopts Paragraphs 31 through 61, which goes through the calculation of the Offense Level and all of what the Guidelines calls the grouping and the multiple count adjustments that are required; and the upshot of all

of that, is that as stated in Paragraphs 31 through 61, his Offense Level is 20.

Let me just make sure that this is clear.  The Government does not move for the third point; right, Ms. Coakley?

MS. COAKLEY:  That's correct.

THE COURT:  Yeah.  So the 20 is --  just so that the record is clear -- it is in the PSR, and I fully adopt it -- the combined adjusted Offense Level is 22, and he gets two points off for Acceptance of Responsibility.

He does not get the third point for Guidelines purposes because the Government has to move that.  It's my understanding of the law that I don't have the discretion to give the third point for Guidelines purposes without the Government moving, and the Government hasn't moved, so, therefore, he gets two points off of the 22, and his Total Offense Level is, therefore, a 20.  His Criminal History Category is Roman Numeral I.  I adopt Paragraphs 62 through 64.

So an Offense Level of 20, and a Criminal History Category of I, yields an Advisory Guideline Range of 33 to 41 months.

However, there is also the addition of 24 months, which must be imposed consecutively because of the guilty plea on the 2024 Indictment.

So in total, that's 33 to 41 months, plus 24 months consecutive, which yields an Advisory Guideline Range effectively of 57 to 65 months.

Mr. Wallace, any objection to the calculation of the range?

MR. WALLACE:  No, Your Honor.

THE COURT:  Ms. Coakley, any objection to the calculation of the range?

MS. COAKLEY:  No, Your Honor.

THE COURT:  All right.  I don't see that there's any victims here pursuant to statute who wish to speak; right, Ms. Coakley?

MS. COAKLEY:  That's correct, Your Honor.  We have reached out to the victim and advised him that he could be present today.

He did provide us a statement about the financial impact that we provided to Probation as part of the PSR.

THE COURT:  I've seen that.

MS. COAKLEY:  Yes.

THE COURT:  Okay.  Thank you.  I'd ask the Government for their view of the appropriate sentence in this case and any argument you wish to make, Ms. Coakley? I've read your brief, and I know that the Government seeks an upward variance here.

MS. COAKLEY:  Yes, Your Honor.  As outlined, we

think that an appropriate sentence is a total sentence of 120 months, which would be a ten-year sentence broken down as 96 months on all charges except Count 4 of the 24 Indictment, so to be followed by that 24 months.  So 96 followed by 24.

As outlined in our prosecution memo -- or excuse me -- our memorandum for sentencing and for an upward variance, we think that this is not an ordinary case.  That the facts here are extraordinary.

The Defendant has engaged in a nearly two-decade-long scheme of identity theft that had substantial impacts and potentially lifelong impacts on the victim here.

We think that the Guideline calculation severely under emphasizes the scope, severity, and the length.  We think it's also important to note that what was done here was done to further the Defendant's fleeing from justice in another case -- to avoid prosecution and a serious offense against a child -- and in doing so, he severely impacted the victim, who now has a criminal history; whose name and biographical information is on the Defendant's marriage license with his second wife, on the birth certificates of his children.

He has open credit cards, bank accounts, incurred debt, and a criminal history, all of which will be

incredibly difficult for the victim in this case to untangle for the rest of his life, and he does that all in an effort to avoid justice.

We also think it's important to note that the Defendant's actions directly undermined some of the most fundamental institutions that are fundamental to our democracy.  He voted.  He obtained legal status and citizenship for his second wife as a spouse of a United States citizen.  He registered to vote and made claims as a United States citizen, and he obtained weapons as -- indicating that he was a member of the U.S. -- that he was a United States citizen.

And so over this two-decade-long fraud, he's undermined democracy, and he has provided an incredible impact on this victim's life who he may never be able to untangle.

And so based on all of that, we think that a ten-year sentence is appropriate, especially in light of the fact that although he's a Criminal History Category I, the record is clear that the Defendant has been consistently, persistently, and intentionally committing crimes for the entirety of that two decades.

And so based on that, we think that the sentence is appropriate.  Thank you.

THE COURT:  Thank you, Ms. Coakley.

Mr. Wallace, I'd ask you for your view of the appropriate sentence in this case and any argument you wish to make; and I've read your papers, sir, and unsurprisingly, you're asking the other way?

MR. WALLACE:  Correct, Your Honor.  Correct.  In this case, Your Honor, we are asking for a downward variance in this case.

Specifically, we are asking that the Court impose an 18-month sentence to all of the counts except for Count 4.

We understand that Count 4 carries a mandatory minimum sentence of 24 months, and we ask that the Court impose the 24-month mandatory minimum to Count 4, and 18 months for the remaining counts.

The reason being for the downward variance, Your Honor, as outlined in my motion is threefold.  It's to avoid sentencing disparity, the nature and characteristics of Mr. Abreu, and the -- or excuse me -- of the offense, and the history and characteristics of Mr. Abreu.

First, Your Honor, to respond to some of the arguments that the Government just posed.  Respectfully, we disagree.  We do believe that -- we believe that the timing of the case is similar to others, but the conduct itself separates him from other similar Defendants.

What I mean by that is, Your Honor, the Government

has highlighted the length of the period of time that Mr. Abreu was in the country using the identity, and I don't believe that that is out of the ordinary for these types of cases for an individual that comes into the country, they will oftentimes remain in the country living under whatever identity they have obtained.

So that, in terms of, like, the length of it, I don't think is anything that is outside the ordinary, and I don't believe the length in and of itself justifies a -- the upward variance in this case, Your Honor.

The -- I guess the main underlying charge here is the identity theft.  And as this Court well knows, and as is outlined in my motion, that most identity theft cases involve a person affirmatively stealing the identity of another with the purpose that they will financially enrich themselves at the expense of the victim.

Meaning, they will take that identity and then use that to rob their bank accounts or to open up credit cards in their names or things --  or have them transfer property, things of the like.  None of that happened in this case.

I understand that the victim has suffered some harm, however, Mr. Abreu did not himself steal any money or property from this victim, nor did he cause the transfer of any property or money, nor did he induce this person to transfer, give, or gift any money or property to himself or

to anybody else.

I understand the Government's argument that Mr. Abreu used this identity in attempt to flee a state court case.  We would reaffirm our arguments that as of today, as this Court sits here, there is no evidence before this Court to support any of the allegations from New Jersey.

Mr. Abreu deserves and is afforded the presumption of innocence in that case, and there has been nothing before the Court to rebut that presumption of innocence in that case.

Notwithstanding that presumption, the Government has put out a press release accusing Mr. Abreu of those allegations in New Jersey.  Mr. Abreu has been -- had had his life threatened multiple times while in custody as a result of this press release.

Again, zero evidence in front of this Court or at sentencing to corroborate any of the allegations of this alleged fleeing.

Next, Your Honor, the passport applications. Oftentimes in these passport fraud cases or fraudulent applications, we see that the purpose of the --  submitting the application is for a nefarious reason.

Meaning that, they will fill out these applications in an effort to go to another country to commit another crime, or as in this case, they will fill out an application

for a minor in an attempt to kidnap the child.

There is a custody dispute or something of the like, and one parent wants to take the children to another country.  That is not the case here.

There is no allegations, and there is no evidence that Mr. Abreu filled out those applications for any other reason other than to go to a family trip with his wife and his two children to go to the Dominican Republic to meet his son for the first time that was living there.

There is no allegations that he was smuggling drugs, smuggling guns, or going to do anything nefarious or illegal in the DR.

As for the firearms that he is alleged to have -- well, that he did possess.  These firearms were not stolen.  These firearms did not -- were not legally altered.  They did not have their serial numbers obliterated.

These firearms were not alleged to have been used in any crime.  These firearms were not alleged to have been smuggled into the United States by Mr. Abreu.  These firearms were not alleged to have been planned to be smuggled out of the country by Mr. Abreu.

All of these things separate him from other individuals who have committed or alleged to have committed these similar crimes.

I understand that there is the allegation in New

Jersey; but aside from that, he does have a Criminal History Category I, and that should be taken into consideration in terms of what provable crimes the Court has before them, and what he's done while in this country.

Finally, Your Honor, Mr. Abreu's wife and two children are now --  she is now the sole financial provider of the children and the family.

She was previously not working when Mr. Abreu was out and not in custody.  She has now found gainful employment, however, it is far less than what Mr. Abreu was earning, far less than what the family is accustomed to be able to sustain themselves on; and I've spoken with her and Mr. Abreu, and they're both very concerned about the financial stress that is being put on his wife and whether she'll be able to continue to support them herself.

For all of these reasons, Your Honor, we believe a downward variance is appropriate in this case.  I don't believe the Government has outlined any specific egregious provable facts or anything with evidence that shows a reason of why the Court should upward vary in this case, Your Honor.  Thank you.

THE COURT:  Thank you, Mr. Wallace.

Let me ask the Government, and really Mr. Wallace too, restitution in this case?

MS. COAKLEY:  We would be seeking restitution, Your

Honor.  We would ask for it to be set for a hearing.

THE COURT:  Yep.  We will set a hearing 60 to 90 days out, and, Ms. Shotwell, if you can look that up; and in a moment when you have it, let the parties know when the restitution hearing is in this case.

Mr. Abreu, sir, you don't have to say anything if you don't want to; but if you wish to say anything on your own behalf before sentence is imposed, you may do so now.

THE DEFENDANT:  First of all, I would like to apologize before the gentleman --  the Judge.  I would like to apologize for the situation.  I am a family man as the attorney said.  I am not the monster that I'm portrayed to be here.

I have lived in the United States for 25 years; and according to me, I was doing things the right way.  My country is the number one country that is poor in education.

I came to this country innocently, and I was -- I came here doing things that I believed that were true.  One, trusting people innocently.  I was using my name.

I am a family man, as I said, and if you give me an opportunity -- a second opportunity, I --  I tell you that you are not going to see me again, if this second opportunity is granted.

THE COURT:  Thank you very much, Mr. Abreu.

Just one moment.  So the restitution hearing in

this case will be set for August 14th at 10:30 a.m.

MS. COAKLEY:  Your Honor, will it be in Fort Lauderdale?

THE COURT:  It will be in Fort Lauderdale.

MS. COAKLEY:  Right.

THE COURT:  Fort Lauderdale, T?

THE COURTROOM DEPUTY:  Yes.

THE COURT:  Yes, Fort Lauderdale.  We would never inconvenience Mr. Wallace.  The -- the --

MR. WALLACE:  The defense appreciates it, Your Honor.

THE COURT:  Yeah, just give me one second.

Okay.  The Court has considered the statements of all the parties, the presentence report, which contains the Advisory Guideline Range, and all the statutory factors set forth in 18 U.S.C. Section 3553(a).

It is the finding of the Court that the Defendant is not able to pay a fine, so no fine will be imposed.

I want to make a bit of a record on this.  In terms of the nature and severity of the offense, the Government in their sentencing memo says it the best.  They say it in arguing for an upward variance.  I'm not going to vary upward here.

I'm going to give a Guideline sentence; but the reason why I'm giving the sentence that I'm giving -- so

it's for Guidelines purposes and for all 3553(a) purposes, and it's going to be a sentence that is at the top of the Guidelines -- is that I think that the Government says it right that any other sentence -- a sentence at the bottom of the Guidelines or below -- does not fully account for the scope and length of the conduct here.

And even accepting  -- and I do accept a lot of what Mr. Wallace says -- in that, there's a lot that is not objected to in the PSR, but the facts are incomplete.

The best example of that is the circumstances in 2007 in New Jersey and allegations of child abuse.  There are -- there is important evidence in this PSR from the wife at the time that tends to favor that something was going on that led to flight.  That is certainly true, and that is why a sentence at the higher end of the Guidelines is properly taking into account that.

But this Court is loath to go further than that; and what I mean is, is that -- and I've seen it -- and the Government is not to be faulted because the age of things, the availability of witnesses, they can't always perfect the evidentiary record -- but what that means is, is that the Court is loath to take those snippets, and, therefore, increase a sentence because of something like child abuse allegations which have not been proven even by a preponderance in this matter, let alone to the extent that

this Court would want to see those things proven up if I was to really factor that in.

Now, having said that, there are things in this PSR that do justify what the Government said in that this is a number of years.  This is voting.  This is acquiring firearms.  This is financial commitments all in the name of somebody that he is not and over a period of years.

That, it seems to me, is why a sentence at the high end of the Guidelines is important here, and it is accounted for, because taking into account even serious aggravated identity thieves that are within this range, this conduct over this period of time, and what he did to C.R.V. over this period of time, and what will linger for C.R.V. -- the anonymous name of the victim  -- after this sentence, that's why this Court cannot agree with Mr. Wallace and his motion for a variance; and why looking at the range here, a sentence at the very high end, it seems appropriate because -- to this Court given all the 3553(a) factors, because you are talking about -- realistically, about 18 to 20 years of conduct; and Ms. Coakley in her memo, and really this morning, says it best, which is it defeats the very heart of the system.

There are things in this PSR that had to be dropped.  Could not be followed up upon.  Even though his fingerprints are tied to those incidents, his name is not.

It is easier to disappear and hide wrongdoing when you do this.

And so for those reasons, I do think -- I appreciate the Government's arguments in seeking an upward variance; but for all those reasons -- the history and characteristics of the Defendant, the nature and severity of the offense as stated by the Government in their memorandum, the need to provide specific deterrence, general deterrence, and protect the public from future crimes, to account for the fact that just punishment and promoting respect for the law has to be a part of any sentence, and the need to avoid unwarranted sentencing disparities among similarly-situated people convicted of the same counts, for all of those reasons, I intend to impose a sentence at the highest of the Guidelines.

I think to do other wise, finally, starts to tread into the need for additional evidence in this Court's view, and I always invite the Government, to the extent that it can -- even though I'm aware of my discretion that I could accept hearsay and find things by a preponderance -- for these kinds of variances on these kinds of allegations, it is always the Court's preference to subject that proof to cross-examination and full testing; and so the Government is aware of that for this case, in past cases, and going forward.

Mr. Abreu, please stand to be sentenced.

It is the judgment of the Court that the Defendant, Carlos Jose Abreu, is committed to the Bureau of Prisons, to be imprisoned for a total of 65 months.

This sentence consists of 41 months as to each Counts 1 through 3 in Docket Numbers 24-60155-CR and 25-60015-CR, to run concurrently with each other, plus 24 months as to Count 4 in Docket Number 24-60155-CR.  That 24 months is to run consecutive to all of the other counts.  So that's 41 plus 24 for a total of 65 months.

Upon release from imprisonment, the Defendant shall be placed on Supervised Release for a term of three years. This term consists of three years as to each of Counts 1 through 3 in the Docket Number -- in Docket Numbers 24-60155-CR and 25-600 -- 5 --  excuse me.  It's happening again -- 24-60155-CR and 25-60015-CR, three years as to all of those counts.  All such terms to run concurrently.

Within 72 hours of release from the custody of the Bureau of Prisons, the Defendant shall report in person to the probation office in the district to which the Defendant is released.

While on Supervised Release, the Defendant shall comply with all the mandatory and standard conditions of Supervised Release, which include not committing any further crimes, being prohibited from possessing a firearm or other

dangerous device, not unlawfully possessing a controlled substance, and cooperating in the collection of DNA.

The Defendant shall also comply with all of the following special conditions:  Surrendering to Immigration for removal after imprisonment, cooperation with Immigration during removal proceedings, and unpaid restitution, fines, or Special Assessments as noted in Part F of the presentence report.

The Defendant shall immediately pay to the United States a Special Assessment of $100 as to each of Counts 1 through 4 in Docket Number 24-60155, and Counts 1 through 3 in Docket Number 25-60015-CR, for a total of $700.

In total, that is a sentence of 65 months imprisonment, three years Supervised Release, restitution to be determined at a hearing on August 14th, unless the parties notify the Court earlier, and a $700 Special Assessment.

Any recommendations, Mr. Wallace?

MR. WALLACE:  Yes, please, Your Honor.  We would request that Mr. Abreu be housed at a facility in the Southern District of Florida.  If possible, closest to Miami.

THE COURT:  I will make that recommendation. Anything else?

MR. WALLACE:  Not at this time, Your Honor.

THE COURT:  Okay.  Are there any open counts?

MS. COAKLEY:  No, Your Honor.

THE COURT:  You're not seeking forfeiture?

MS. COAKLEY:  Your Honor, we'll --  I think there were forfeiture allegations, and our office takes action.  I don't have any action on it at this time, but if there's anything further, we'll --

THE COURT:  Well, I don't have -- I don't have an Order of Forfeiture, so --

MS. COAKLEY:  I'm not seeking anything at this time.

THE COURT:  Okay.  Well, if I don't announce it as part of the judgment, you're going to -- you're going to waive it.

MS. COAKLEY:  We would ask Your Honor to order forfeiture, and we'll file any additional -- there's firearms in this case.  I --

THE COURT:  You're administratively forfeiting those?

MS. COAKLEY:  That's what we expect to occur, yes.

THE COURT:  Okay.  So you want to administratively forfeit firearms involved in this case?

MS. COAKLEY:  Correct, Your Honor.  There's also a number of documents that are -- we wouldn't want the Defendant to be able to --

THE COURT:  You're going to forfeit documents and firearms that are part of the counts in this case?

MS. COAKLEY:  Correct, Your Honor.

THE COURT:  Anything else?

MS. COAKLEY:  Not at this time, no.

THE COURT:  Any objection to the administrative forfeiture of those items stated on the record?

MR. WALLACE:  Not to the firearms, Your Honor.  I would have to somehow get a list of the documents before I could state --

THE COURT:  Well, let's just say very clearly then because maybe we can get consent.  I can't imagine that C.R.V. documents you would have any problem administratively forfeiting in this case; right?

MR. WALLACE:  That is correct.

THE COURT:  Is there anything beyond C.R.V. documents that you want to administratively forfeited?

MS. COAKLEY:  No, Your Honor.

THE COURT:  Okay.  So that's agreed.  The firearms -- the firearms in this case and any C.R.V. documents in this case are administratively forfeited on the consent of the Defendant.

Anything else, Mr. Wallace?

MR. WALLACE:  I don't mean to be nitpicky, Your Honor.  I'm just trying to avoid potential issues down the

road.

The only -- the only thing I foresee a potential issue being, is there's a document that includes C.R.V. and Mr. Abreu's information as well.  I'm not really sure how -- I mean, I'm fine with redacting C.R.V.'s information, of course.  I'm just not sure how --

THE COURT:  Well, anything that C.R.V. is on, I don't see how you're going to really prevail in letting him keep it.

MR. WALLACE:  I agree -- I agree with you, Your Honor.  I'm just -- I'm hesitant to stipulate to something that might have C.R.V.'s initial on it, but it's really only pertaining to Mr. Abreu.

THE COURT:  So what we'll do, Ms. Coakley, you'll have seven days to itemize the documents that you're calling C.R.V. documents that are to be administratively forfeited in this case so that Mr. Wallace can see them.  You've got to put together what you want.

MS. COAKLEY:  Right.  I don't -- there's no documents that have both Mr. Abreu --

THE COURT:  Well, he disagrees, and he's thinking of something else, so when you -- when you put your list together, and his document's not on it, he didn't consent to something that he's thinking about.

MS. COAKLEY:  Okay.

THE COURT:  And that's the way the world works. You'll put together a list.  You'll provide it to Mr. Wallace, you'll provide it to the Court, and he has agreed that C.R.V. documents will be administratively forfeited in this case as well as the firearms.

So beyond that, after you get him that list of the administrative forfeiture of those items -- there's nothing else that you're seeking forfeiture of; correct?

MS. COAKLEY:  Yes, Your Honor.  We did not recover any information, any documents in the Defendant's true name.

THE COURT:  I understand.  Okay.  We've made the record.  I'll make the recommendation for Southern District of Florida.

Anything else we need to do, Ms. Coakley?

MS. COAKLEY:  No, Your Honor.

THE COURT:  Mr. Wallace?

MR. WALLACE:  No, Your Honor.  Thank you.

THE COURT:  That's the sentence of the Court.  Mr. Abreu, we're adjourned.  Best of luck to you, sir.

THE COURTROOM DEPUTY:  All rise --

THE COURT:  Oh, one moment.  I'm sorry.  One last thing.  Now that the sentences have been imposed, Mr. Wallace, do you or your client object to the Court's findings of fact and the manner in which sentence was pronounced?

MR. WALLACE:  No, Your Honor, we do not.

THE COURT:  Okay.  Mr. Abreu, you have the right to appeal the sentence just imposed.  Any Notice of Appeal must be filed within 14 days after entry of the judgment.

If you are unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis, which simply means without payment of the cost.

Do you understand all of that, Mr. Abreu?

THE DEFENDANT:  Yes.

THE COURT:  That's the sentence of the Court. We're adjourned.  Thank you.

MR. WALLACE:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  All rise.

(The hearing was concluded at 11:32 a.m.)

CERTIFICATE OF REPORTER

I, Shamelle Kelley, Federal Official Court Reporter, in and for the United States District Court for the Southern District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*s/Shamelle Kelley* _____
**SHAMELLE KELLEY, RPR**